IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSE GONZALEZ BULA, | § § § | |
| *Plaintiff,* | § § | 5-24-CV-00213-FB-RBF |
| vs. | § § § | |
| LELAND DUDEK, ACTING COMMISSIONER OF SOCIAL SECURITY; | § § § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff Jose Gonzalez Bula's request for judicial review of the administrative denial of disability-insurance benefits under Title II of the Social Security Act. This action was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules and the docket management order entered on October 8, 2019, in the San Antonio Division of the Western District of Texas. This Court has jurisdiction to review a final decision of the Social Security Administration (SSA), *see* 42 U.S.C. § 405(g), and authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons stated herein, the Court should **REVERSE** the Commissioner's decision and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

**Factual and Procedural Background**

Plaintiff Gonzalez Bula filed an application on October 2, 2021, for a period of disability-insurance benefits beginning on May 7, 2020. The claim was denied initially on March 31, 2022, and upon reconsideration on December 29, 2022. Tr. 14.[1] Gonzalez Bula requested and obtained a hearing before an administrative law judge (ALJ). *Id.* The ALJ conducted a telephonic hearing in August of 2023 with Gonzalez Bula, his attorney, an attorney for the SSA, and a vocational expert in attendance.

The ALJ ultimately denied benefits after moving through the required five-step sequential analysis, through which the ALJ considers the following:

> (1) whether the claimant is engaged in substantial gainful activity, (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment meets or equals one of the listings in the relevant regulations, (4) whether the claimant can still do his past relevant work, and (5) whether the impairment prevents the claimant from doing any relevant work.

*Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021).

As relevant here, the ALJ at step two found Gonzalez Bula has the following severe impairments: cirrhosis, lumbar degenerative disc disease, deconditioning, obesity, and mild osteoarthritis of the hands. Tr. 16.

Although the ALJ noted that Gonzalez Bula has a "medically determinable mental impairment of posttraumatic stress disorder (PTSD), the ALJ concluded at step two that it "does not cause more than minimal limitation in the claimants' ability to perform basic mental work activities and is therefore nonsevere." Tr. 17. At step three, the ALJ found no impairment or combination of impairments that meets or medically equals the severity of one of the listed

---

[1] The transcript of the agency proceedings will be referred to herein as "Tr." along with a page reference to the consecutively paginated official transcript found on the docket at entries 8- through 8-8.

impairments. *Id*. The ALJ next determined that Gonzalez Bula has no limitations in understanding, remembering, or applying information, mild limitations in interacting with others, mild limitations in concentrating, persisting, or maintaining pace, and no limitations in adapting or managing oneself. *Id*.

The ALJ produced a residual-functional-capacity assessment for Gonzalez Bula that indicated the following: Gonzalez Bula can "perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand/walk 4 hours in an 8 hour day for up to 30 minutes at a time, never climb ladders/ropes/scaffolds, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and frequently handle and finger." *Id*. 19-20. In producing the residual-functional-capacity assessment, the ALJ generically stated that he

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

*Id*. at 20.

At step four—assisted by the responses to hypothetical questions based on the residual functional capacity posed by the ALJ to the vocational expert—the ALJ determined that Gonzalez Bula could perform his past semi-skilled or skilled relevant work "as a sales representative and as a human resources assistant." Tr. 22, 50. The ALJ concluded the analysis at step four, found Gonzalez Bula is not disabled, and did not make an alternative step-five determination. *Id*. 22.

## Analysis

The ALJ's ruling failed to explain whether and how the ALJ considered Gonzalez Bula's PTSD when formulating a residual functional capacity for Gonzalez Bula. Because pertinent

guidance and regulations require the ALJ to consider even non-severe impairments, like Gonzalez Bula's PTSD, in the residual-functional-capacity calculus, and because in this case even a minor alteration to the residual-functional-capacity calculus could affect the hypotheticals posed to the vocational expert and the ultimate disability finding, remand is required.

>   A.  **The Court Applies Familiar Standards When Reviewing the Denial of Social Security Benefits.**

When reviewing the denial of social security benefits, the Court considers whether "the final decision is supported by substantial evidence" and "the Commissioner used the proper legal standards to evaluate the evidence." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation and internal quotations omitted).

The Court "may affirm only on the grounds" provided by the ALJ, *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation omitted), and may not reweigh evidence, as "[c]onflicts of evidence are for the Commissioner, not a court, to resolve," *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Reversal is warranted only if an error was harmful. *Keel*, 986 F.3d at 556. "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Id*.

>   B.  **ALJ's Must Consider Even Non-Severe Medically Determinable Impairments When Determining a Claimant's Residual Functional Capacity.**

No one disputes that medically determinable impairments can be deemed non-severe at step two of the sequential analysis. Indeed, the ALJ here recognized that Gonzalez Bula suffers from medically determinable non-severe PTSD. As the ALJ noted, a medically determinable impairment is non-severe "only if it is a slight abnormality having such minimal effect on the

4

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quotation omitted); *see also* Social Security Ruling (SSR) 85-28, 1985 WL 56856.

But even when an impairment is non-severe, Fifth Circuit precedent and pertinent SSA guidance require that the ALJ must still "consider" the impairment when determining a claimant's residual functional capacity. *See, e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) ("[T]he ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effects of all of these impairments.") (citation and quotation marks omitted); *see also* SSR 96-8p, 1996 WL 374184; 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' ... when we assess your residual functional capacity."). SSR 96-8P instructs that "all relevant evidence in the case record" should be considered for residual functional capacity, and "[t]he adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"

To sum up, even when no limitations are included in a residual-functional-capacity assessment due to a given medically determinable non-severe impairment, there must be some indication in the record to reflect that the ALJ nonetheless "consider[ed]" the impairment when crafting the residual-functional-capacity-assessment. After all, even a minimal effect on that assessment, or a relatively minimal effect in combination with other effects, could make a meaningful difference in the disability calculus. *See, e.g.*, SSR 96-8P. ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.").

C.     **The ALJ Erred Because There Is No Indication That Gonzalez Bula's PTSD Was Considered When Arriving at a Residual Functional Capacity.**

Here, there is no meaningful indication in the ALJ's ruling, even read as a whole, to reflect that the ALJ considered Gonzalez Bula's PTSD when crafting the residual-functional-capacity assessment. Accordingly, the ALJ erred.

The burden here is not a heavy one, and it asks only that there must be something in the ALJ's ruling, taken as a whole, to which the Commissioner can point that assures the Court the ALJ considered all medically determinable impairments in the residual-functional-capacity calculus. *See, e.g.*, *Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 486 (W.D. Tex. 2022); *see also Belk v. Colvin*, 648 Fed. App'x 452, 454,55 (5th Cir. 2016) (per curiam) (reading ALJ decision as a whole). To be clear, when there is a basis to support a conclusion that the ALJ has "consider[ed]" all impairments, the ALJ does not necessarily err if the explanation provided is terse. As previously explained in another case,

> The error here is not the ALJ's failure to include mental limitations in the residual-functional-capacity assessment. Rather, the error is the failure to consider whether mental functional limitations were warranted. In *Garcia v. Berryhill*, the ALJ considered all of the claimant's impairments—severe and non-severe—in determining at step four that the claimant retained the ability to perform his past relevant work. No. 7:16-CV-119, 2017 WL 920750, at *11 (S.D. Tex. Jan. 18, 2017), *report and recommendation adopted*, 2017 WL 896847 (S.D. Tex. Mar. 7, 2017), *aff'd sub nom.* 880 F.3d 700 (5th Cir. 2018). Accordingly, district courts in this circuit have found no legal error where an ALJ declines to include mental limitations in a residual-functional-capacity analysis "so long as the ALJ considered the limiting effects and restrictions of all impairments in the [residual-functional-capacity analysis, even those impairments that are non-severe." *Martha L. v. Saul*, No. 1:20-CV-00003-H-BU, 2021 WL 3610316, at *5 (N.D. Tex. July 27, 2021) (collecting authorities).

*Castillo*, 599 F. Supp. 3d at 489.

But it is not enough for an ALJ to recite boilerplate language, as occurred here, that the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence." Tr. 20. If such boilerplate recitations were necessarily sufficient, Courts wouldn't ever need, and claimants wouldn't be entitled to receive, a statement of reasons at all. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (noting that an ALJ's "bare conclusions" are "beyond meaningful review").

### D.     The ALJ's Error Was Not Harmless.

To warrant reversal and remand, the error committed cannot be harmless. "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel*, 986 F.3d at 556.

The ALJ's error here was not harmless, as demonstrated by the hypotheticals posed to the vocational expert and the expert's answers in response. *See* Tr. 50-52. At the hearing, the vocational expert testified that someone with limitations like those in Gonzalez Bula's residual functional capacity could perform Gonzalez Bula's past work as a sales representative (DOT 185.167-042) and human resources assistant (DOT 209.362-026). Tr. 50-51. But at the hearing, when the ALJ asked if that same hypothetical individual could perform that same past relevant work with some mental limitations, the answer was "no." *Id*. Although there were other jobs in the economy available with those mental limitations, the ALJ asked an additional hypothetical with an off-task limitation that then precluded other jobs. Based on this record, there is no way to determine whether and to what extent additional limitations in the residual-functional-capacity assessment to account for a non-severe mental impairment would have affected the disability determination. Because it is not "inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err," the error here is harmful. *Keel*, 986 F.3d at 556; *see also* SSR 96-8P. ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations

7

or restrictions due to other impairments—be critical to the outcome of a claim.").

## Conclusion

For these reasons, the Court should **REVERSE** the Commissioner's decision and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 26th day of August, 2025.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE